UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ANTHONY BAEZA, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | Civil Action No.  SA-14-CV-659-XR |
| § | |
| OFFICER DONALD BECKER, § | |
| § | |
| *Defendants.* § | |
| § | |

**ORDER**

On this date, the Court considered Defendant Donald Becker's Motion for Summary Judgment (docket no. 26) and Plaintiff Anthony Baeza's Response (docket no. 29). After careful consideration, the Court will GRANT the motion in part and DENY the motion in part.

**FACTUAL BACKGROUND**

Plaintiff Anthony Baeza's ("Baeza") claims arise out of alleged violations of his First and Fourth Amendment rights by Officer Donald Becker ("Becker"), a police officer employed by the San Antonio Police Department. Baeza is an independent taxi cab driver for the Greater San Antonio Transportation Company. Docket no. 4, 2. He drives Yellow Cab #150. *Id.*

The incident in question occurred on April 12, 2013, at approximately 7:35 p.m. Becker Aff. at 1. Baeza was driving his cab and stopped at the intersection of N. St. Mary's St. and Commerce St. in downtown San Antonio. *Id.* The cab was not in service. Baeza Decl. at 1. Becker was assisting another officer, Christopher Ray, as he conducted a stop in front of a convenience store located near the intersection. Becker Aff. at 1. Becker claims that while assisting Officer Ray, he heard loud music, noisy enough to constitute a violation of San

1

Antonio's noise nuisance ordinance, Sec. 21-52, and thus he decided to investigate. *Id.* Becker's expert witness, Albert Ortiz, believes this was enough information for Becker to reasonably believe he had probable cause to believe a violation of the ordinance was occurring. Ortiz Aff. at 4. Baeza claims his music was playing at a normal volume. Baeza Decl. at 2. He contends a car behind him was playing the loud music that was the source of the noise Becker heard. *Id.*

The parties paint different pictures of the events that followed. Becker maintains that as he approached the area the music was coming from, he noticed Baeza's taxi but decided to give Baeza the benefit of the doubt and continued walking. Becker Aff. at 2. Then, when he determined the music could not be coming from anywhere else, he turned back and asked Baeza if the music was coming from his vehicle. *Id.* Then, Becker alleges that Baeza responded, "I guess it is." *Id.* Becker contends that he then told Baeza to turn down the music and gave him a verbal warning, but Becker responded with, "This is America, I can listen to it as loud as I want." *Id.*

Baeza explains that he had turned his music off by the time Becker approached the vehicle. Baeza Decl. at 3. Then, Becker asked him if he had been playing music. *Id.* When he said yes, Becker asked him what he had been playing. *Id.* Baeza turned the music—which he had been playing on his cell phone—back on. *Id.* Baeza says that Becker then told him, "I don't like that kind of music and neither does anyone else so turn that shit off." Baeza Dep. at 83. Baeza also says that the correct wording of his response was "[t]hank God I live in America and I get to choose the music I want." *Id.* at 84.

Becker states in his affidavit that based on this statement, he "formed a reasonable belief" that Baeza was not going to comply, and so Becker decided to issue Baeza a citation for a noise

nuisance violation. Becker Aff. at 2. Becker states that he told Baeza to put his car in park and repeatedly asked for Baeza's driver's license, but Baeza would not comply. *Id.* at 2. Then, Becker ordered Baeza to exit the taxi cab. *Id.* Becker alleges that Baeza refused to do so, and so Becker was forced to attempt to open the door and remove Baeza from the cab. *Id.* He was unsuccessful. *Id.* Baeza put the cab in park and exited the vehicle. *Id.*

Baeza's account adds a few more details to this portion of the incident. He claims Becker immediately "rushed" his cab after he said "[t]hank God I live in America and I get to choose the music I want," and that while attempting to open the door, Becker shouted at him, "Okay smart ass. I'm tired of you f—ing gangsters. You're going to jail." Baeza Dep. at 84. Baeza also alleges that while he was still in the cab, Becker aggressively used his left hand to push Baeza's head against the headrest while Becker was attempting to unlock the door. *Id.* at 87–88. Then, Baeza claims that he did not exit the cab independently; rather, Becker grabbed him with both hands and pulled him out. *Id.* at 90. This left his foot caught between the curb and the taxi cab. *Id.* at 92. Then, Baeza claims that Becker shoved him twice against the open door frame of the cab. *Id.* at 93.

Becker alleges that Baeza was "hostile and aggressive" during this process, and so he ordered Baeza to turn around and place his hands behind his back. Becker Aff. at 2. When Baeza refused to do so, Becker turned him around. *Id.* Then, while Baeza had his hands behind his back, Becker claims that Baeza began to "twist," so Becker had to push him against the car. *Id.* Becker states that he was forced to handcuff Baeza "for [Becker's] safety due to [Baeza's] behavior and attitude." *Id.* Becker claims that he only used reasonable and necessary force. *Id.*

Becker's expert witness, Albert Ortiz, also contends that any use of force during this time was reasonable and necessary. Ortiz Aff. at 4.

On the other hand, Baeza claims that Becker was the one exhibiting aggression during this part of the incident. Baeza contends that once Becker turned him around to face the vehicle, Becker shoved him multiple times. Baeza Dep. at 93. Baeza claims he was "a hundred percent compliant" during this process. *Id.* He also states that Becker made a "racial comment" to him during this time. *Id.* at 128. Baeza states that while he was handcuffed, the cuffs were too tight. Baeza Decl. at 5.

Originally, Baeza was going to be arrested and jailed for his conduct during the incident. Ortiz Aff. at 5. Baeza requested a supervisor be dispatched, and he was handcuffed for 20 minutes while they waited for the sergeant to arrive. *Id.* At some point in time, the officers decided to let Baeza go and simply issued him citations. *Id.* He was detained for approximately one hour, which Ortiz claims is a reasonable amount of time given the procedures and paperwork involved. *Id.* Ultimately, Becker issued Baeza a citation for the noise violation and two ground transportation citations for not having a manifest and nametag. Becker Aff. at 2. Two other officers who had arrived on the scene issued Baeza citations for not having a collared shirt and for having an expired map book. *Id.* Baeza contends that because his taxi was not in service at the time, he was not required to comply with the ordinances that related to his cab service. Baeza Decl. at 5. The four tickets related to the taxi ordinances were ultimately dismissed. *Id*. The noise ordinance violation was also dismissed. *Id.* The stated reason for dismissal was "officer does not recall." *Id.*

As a result of the incident, Baeza alleges a variety of physical injuries. First, he claims that he had swelling in his wrists that went away after about three days. Baeza Dep. at 128. He says his wrists were back to normal within a week, but during that week it was difficult to drive, and as a result, he took some time off of work. *Id.* at 131. He did not seek any medical attention for the injuries to his wrists.[1] *Id.* at 131–32.

Additionally, Baeza claims that he suffered from headaches, nervousness, loss of appetite, stiffness, and anxiety as a result of the incident. Becker Dep. at 132. He did not seek any medical attention for his headaches and suffered no lacerations or bruising on his head. *Id.* at 132–33. The headaches lasted for two months. *Id.* at 133. He did not seek any counselling for his anxiety. *Id.* at 134. Furthermore, he says his ankle was twisted as a result of the incident. *Id.* at 135. He did not seek any medical treatment for his ankle and the condition lasted for about 10 days. *Id.* Baeza also claims that his blood pressure was elevated as a result of the incident. *Id.* at 136. However, he had high blood pressure before the accident and had been taking medication for the seven years prior to the accident. *Id.*

## PROCEDURAL BACKGROUND

On July 22, 2014, Baeza filed his original complaint. Docket no. 1. On July 30, 2014, he filed an amended complaint. Docket no. 4. Baeza brings suit pursuant to 42 U.S.C. § 1983. *Id.* at 7. He states claims for unlawful arrest (or seizure), illegal search, excessive force, and malicious prosecution in violation of the Fourth Amendment. *Id.* at 6–7. He also states a claim for First Amendment retaliation. *Id.* at 7–8.

---

[1] Becker's expert witness, Albert Ortiz, reviewed photographs of Baeza's wrists that were taken in the days following the incident. Ortiz Aff. at 5. He believes the photographs indicate that any injury to Baeza's wrist was caused by Baeza's own struggling and twisting of his hands while he was cuffed. *Id.* Mr. Ortiz is not a medical doctor and thus the Court does not believe he is qualified to render such an opinion.

Becker filed his first answer on August 21, 2014.  Docket no. 6.  He filed an amended answer on December 23, 2014.  Docket no. 13.  On July 31, 2015, Becker filed a motion for summary judgment on all of Baeza's claims.  Docket no. 26.  Becker argues that: 1) he is entitled to qualified immunity; 2) Baeza's injuries, if any, are de minimis; and 3) malicious prosecution is not a cognizable federal claim.  *Id.*  Baeza filed his response on September 3, 2015.  Docket no. 29.  He contests Becker's arguments about qualified immunity and the nature of his injuries, but concedes there is no federal claim for malicious prosecution.  *Id.*

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

## ANALYSIS

Section 1983 prohibits a person, "under color of any statute, ordinance, regulation, custom, or usage of any State" from subjecting, or causing to be subjected, any citizen or any person within the jurisdiction of the United States "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights," but simply provides a "method for vindicating federal rights elsewhere conferred." *Flores v. City of Palacios*, 381 F.3d 391, 404 (5th Cir. 2004).

Becker has raised the defense of qualified immunity to Baeza's wrongful arrest, unreasonable search and seizure, excessive force, and retaliatory arrest claims.  Docket no. 26 at 5.  "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Once qualified immunity is properly raised, the plaintiff bears the burden of negating the defense, even on summary judgment. *Id.*

Claims of qualified immunity require a two-step analysis.  As a public official, Becker is entitled to qualified immunity on Baeza's § 1983 claims, and will thus succeed in a summary judgment motion, unless: 1) Baeza has adduced sufficient evidence to raise a genuine issue of material fact suggesting that Becker's conduct violated an actual constitutional right; and 2) Becker's "actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).  The court has discretion to decide which prong of the two-part inquiry to address first. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Brown v. Lynch*, 524 Fed. Appx. 69, 74 (5th Cir. 2013) (citing *Brumfield*, 551 F.3d at 326). Furthermore, "objective reasonableness" is a matter of law for the court to determine. *Id.* A police officer's conduct is objectively reasonable unless all reasonable officials in that officer's circumstances would have known that the conduct violated the plaintiff's Constitutional rights. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). In other words, "[i]f reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (citing *Malley v. Briggs*, 475 U.S. 335, 34 (1986)).

### I. Unlawful Arrest/Seizure

Baeza alleges that his arrest was unlawful and constituted a violation of his Fourth Amendment rights. Docket no. 4 at 7. Becker maintains that he had probable cause to arrest Baeza. Docket no. 26 at 8. Furthermore, he explains that "if officers of reasonable competence could disagree on the existence of probable cause, immunity should be recognized." *Id.* at 7–8 (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). In response, Baeza claims there are genuine factual disputes as to whether probable cause existed. Docket no. 29 at 7–8.

First, the Court will determine if Baeza produced enough evidence to raise a genuine issue of material fact suggesting that Becker violated an actual constitutional right when he

arrested him. *Brumfield*, 551 F.3d at 326. To establish a claim of unlawful arrest, Baeza must show that, at the time of his arrest, Becker lacked probable cause to believe that Baeza was guilty of the crime charged. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Santana,* 427 U.S. 38, 42 (1976). Importantly, "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36, (1979).

Here, the offense at issue was a violation of San Antonio's noise ordinance: Chapter 21, Article III, Division 1, § 21-52 of the City of San Antonio Code of Ordinances. The ordinance provides that "when . . . carried on in such a manner, or with such volume . . . so as to annoy, to distress, or to disturb the quiet, comfort, or repose thereof . . . [t]he playing . . . of any radio . . . sound amplifier or similar device" is a criminal offense. CITY OF SAN ANTONIO CODE OF ORD. Ch. 21, Art. III, Div. 1, § 21-52 (2014). Texas law permits an individual to be arrested for even the most minor criminal offenses, including violation of a noise ordinance. *See Boyd v. State*, 217 S.W.3d 37, 43 (Tex. App.—Eastland 2006, pet. ref'd) (describing an investigation in which officers detained and arrested an individual while investigating the violation of a noise ordinance).

The parties' versions of the events that led to Baeza's arrest differ. Becker was assisting another police officer when he heard loud music coming from the intersection. Becker Aff. at 1.

9

Baeza does not dispute this assertion. Becker alleges that Baeza's cab was the only vehicle present in the intersection, but Baeza maintains that there was another vehicle behind him. Becker Aff. at 1; Baeza Dep. at 79. Baeza admits that he was playing music. Baeza Decl. at 3. However, he contends that it was not loud music, and that he had turned it off by the time Becker arrived at the intersection. *Id.* Both Becker and Baeza state that Baeza admitted to Becker that he had been playing music. Becker Aff. at 1; Baeza Dep. at 82. Baeza also states that the car behind him had been playing louder music than he had. Baeza Decl. at 3.

Despite the differences in the two stories, it is undisputed that Becker heard loud music coming from the intersection, that Baeza was playing music, and that Baeza told Becker that he had been playing music. Thus, even viewing the evidence in the light most favorable to Baeza, the "totality of the facts and circumstances within [Becker's] knowledge at the moment of arrest [were] sufficient for a reasonable person to conclude" that Baeza had violated the noise ordinance. *See Santana*, 427 U.S. at 42. It is irrelevant that the citation was later dismissed. *See Michigan*, 443 U.S. at 36 ("[T]he mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest."). This Court finds that even Baeza's account of the incident shows Becker had probable cause to arrest Baeza for violation of the noise ordinance.

Even if it could be argued that Baeza had adduced evidence to raise a fact dispute suggesting that Becker had violated his constitutional rights, Becker's actions were not clearly unreasonable in light of clearly established law at the time of the incident. *See Brumfield*, 551 F.3d at 326. While this Court finds that Becker did have probable cause to arrest Baeza, even if he did not, "reasonable public officials could differ as to whether [Becker's] actions were

10

lawful," given that it is undisputed that Baeza admitted he had been listening to music.  *See Zarnow*, 500 F.3d at 408.  At the very least, "officers of reasonable competence could disagree on the existence of probable cause" in this scenario.  *See Babb*, 33 F.3d at 477.

Given that Becker has not shown that there is a material factual dispute under not just one, but both prongs of the qualified immunity inquiry, the Court finds that Becker is entitled to qualified immunity.  Becker's motion for summary judgment as to Baeza's claim for unlawful arrest under the Fourth Amendment is granted.

## II.     Illegal Search

Baeza also alleges in his complaint that the search of his person was unlawful and violated his Fourth Amendment rights.  Docket no. 4 at 6–7.  In his summary judgment motion, Becker maintains that he is entitled to qualified immunity on Baeza's illegal search claim as well.  Docket no. 26 at 9.  Baeza makes no specific arguments in his response about the search.  *See* docket no. 29.  Additionally, the complaint and summary judgment evidence offer scant details about any search of Baeza.

First, the Court will determine if Baeza adduced enough evidence to raise a material fact dispute suggesting that Becker violated an actual constitutional right when he searched him. *Brumfield*, 551 F.3d at 326.  It is well established that a police officer may conduct a warrantless search of a person incident to the person's lawful arrest.  *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) ("The two cases before us concern the reasonableness of a warrantless search incident to a lawful arrest. . . [I]t has been well accepted that such a search constitutes an exception to the warrant requirement.").  Since the Court has determined that even when viewing the evidence in the light most favorable to Baeza, the arrest was lawful, there can also be no

11

genuine dispute of material fact as to whether Becker violated Baeza's constitutional rights when he searched his person. Even if the Court were to find that Baeza's rights had been violated, there is no evidence of any factual dispute in the summary judgment record that would show Becker's actions were clearly unreasonable. *See Brumfield*, 551 F.3d at 326. The Court grants Becker's motion for summary judgment as to Baeza's claim for illegal search in violation of the Fourth Amendment. That claim is dismissed.

### III. Excessive Force

Next, Baeza alleges Becker used excessive force during his arrest and detainment in violation of Baeza's Fourth Amendment rights. Docket no. 4 at 7. Becker argues that the amount of force he used was necessary. Docket no. 26 at 11. Additionally, he contends that Baeza's injuries, if any, were *de minimis*. *Id.* To support his arguments, he cites *Williams v. United States*, a district court case in which the Southern District of Texas found that even though the plaintiff had "severe bruising and scrapes upon his body" and "extreme pain from being kicked and sprayed in the eyes with pepper spray," the injuries were "no more than *de minimis*." *Id.* at 12–13 (citing *Williams v. United States*, No. H-08-2350, 2009 WL 3459873, at *13 (S.D. Tex. Oct. 20, 2009)).

In contrast, Baeza contends that the amount of force used by Becker was objectively unreasonable because Baeza was "never hostile or disrespectful" toward Becker. Docket no. 29 at 10. Baeza also disputes that his injuries—which he alleges include swollen wrists, persistent headaches, and pain in his ankle—are more than *de minimis*. *Id.*

The first part of the qualified immunity inquiry requires the Court to determine if Baeza has presented enough evidence to raise a genuine issue of material fact suggesting that Becker

12

violated an actual constitutional right. *Brumfield*, 551 F.3d at 326. To establish an excessive force claim, Baeza must show that he suffered: "1) injury, 2) which resulted directly and only from a use of force that was clearly excessive, and 3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citing *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir.1994)). To satisfy the first requirement, the injury need not be significant, but must be more than *de minimis*. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

The Fifth Circuit has clarified that a court's determination of whether or not an injury is *de minimis* and whether or not the amount of force used was clearly unreasonable are inextricably linked. *Brown*, 524 Fed. Appx. at 80 (relying on a wealth of published Fifth Circuit case law to make that determination, including: *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012); *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999); *Ikerd v. Blair*, 101 F.3d 430, 434–35 (5th Cir. 1996)).

The Court explained:

> We begin by noting that although a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is "directly related to the amount of force that is constitutionally permissible under the circumstances." Any force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only. Thus, "only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment." And as long as a plaintiff has suffered "some injury," even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force.

13

*Id.* In other words, if the force used is objectively unreasonable, any injury—no matter how small—will exceed the *de minimis* threshold. *Id.* Thus, the Court must examine not just the factual disputes that surround the seriousness of Baeza's injuries, as the parties' briefing would suggest, but whether or not there are genuine disputes of material fact surrounding the "excessiveness" and "unreasonableness" of the amount of force Becker allegedly used.

"Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville*, 567 F.3d at 167 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (other citations omitted). Courts should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Additionally, since police officers are regularly forced to "make split-second decisions" in volatile situations, courts should evaluate the officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Here, the differing accounts of the incident presented by Baeza and Becker's summary judgment evidence create genuine issues of material fact that prevent the Court from determining whether the force used by Becker—if any—was clearly excessive and unreasonable. Becker maintains that Baeza refused to get out of his vehicle and would not provide his driver's license. Becker Aff. at 2. He also contends that Baeza exited his cab independently. *Id.* Becker alleges that during the incident, Baeza was "hostile and aggressive" and that Becker had to handcuff Baeza for Becker's own safety. *Id.* Other than physically turning Baeza around and handcuffing him, Becker makes no mention of any use of force. *See id.*

Baeza's deposition tells a different story. Baeza alleges that he did not resist throughout the incident and that he was "a hundred percent compliant." Baeza Dep. at 93. He maintains that Becker never asked to see his driver's license. *Id.* at 95. Additionally, he claims that Becker slammed his head into his headrest while he was still in the vehicle. *Id.* at 84. Then, he claims that he did not exit the vehicle independently, but that Becker grabbed his shirt at chest-level with both hands and forcefully pulled him out of the vehicle. *Id.* at 90. This allegedly caused Baeza's foot to slam against the curb, which led to an injured ankle. *Id.*; Baeza Decl. at 4. Then, Baeza maintains that Becker shoved him twice against the cab and that this caused him to hit his head. *Id.* at 93. He also claims that Becker handcuffed so tightly that it was painful. Baeza Decl. at 4. Baeza claims that as a result of the force used, he suffered from swollen wrists, persistent headaches, pain to his ankle, increased blood pressure, and anxiety. *Id.* at 5.

Viewing the evidence in the light most favorable to Baeza, a factfinder could reasonably conclude, based on Baeza's testimony, that Becker slammed Baeza's head against his headrest, dragged his body out of the car, and violently pushed him against the vehicle twice, causing him to hit his head. Under these summary judgment facts, Becker's use of force would be clearly excessive and unreasonable as a matter of law when viewed in conjunction with the *Graham* factors—namely that the crime at issue was a noise violation and Baeza contends he offered no resistance. In concluding that viewing the evidence in the light most favorable to Baeza the force clearly exceeded that which a reasonable officer would deem warranted, the Court also concludes that Baeza's injuries—even if minor—are constitutionally significant and not *de minimis*. Baeza has adduced enough evidence to raise a genuine issue of material fact suggesting that Becker violated an actual constitutional right. *See Brumfield*, 551 F.3d at 326.

There also remain genuine issues of material fact as to the second prong: whether Becker's "actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* At the time of the incident in this case, Fifth Circuit case law made clear that "repeatedly striking a non-resisting suspect is excessive and unreasonable force." *Brown*, 524 Fed. Appx. at 82 (citing *Bush v. Strain*, 513 F.3d at 502 (5th Cir. 2008) (holding that an officer had used excessive force when he slammed a suspect's face into a vehicle after she had ceased resisting arrest)). Given that facts bearing on the amount of resistance, if any, offered by Baeza and the type and amount of force, if any, used by Becker remain in dispute, summary judgment would not be appropriate.

Viewing the evidence in the light most favorable to Baeza, this Court finds that Baeza has produced evidence of a genuine dispute of material fact as to his claim for excessive force on both prongs of the qualified immunity inquiry. Becker's motion for summary judgment as to Baeza's excessive force claim is denied.

### IV.   Retaliatory Arrest

Baeza also alleges that his arrest was in retaliation for his statements to Becker about his freedom to listen music, which is a violation of his First Amendment rights. Docket no. 4 at 6.

First, the Court will examine if Baeza produced sufficient evidence to raise a material fact dispute suggesting that Becker violated an actual constitutional right when he arrested him. *Brumfield*, 551 F.3d at 326. To establish a claim for First Amendment retaliation, a plaintiff must show: 1) he or she was engaged in constitutionally protected activity; 2) the actions of the defendant caused the plaintiff to "suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" and 3) the defendant's adverse actions were

16

"substantially motivated" against the plaintiff's exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). In the context of retaliatory arrests, the Fifth Circuit has mandated that "courts need to be alert to arrests that are prompted by constitutionally protected speech." *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008).

However, if an officer has probable cause to arrest an individual for a crime, that individual cannot make out a claim for retaliatory arrest "by contemporaneously shouting 'police officers are corrupt.'" *Id.* If probable cause exists, "any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment." *Id.* The Supreme Court affirmed this principle in *Reichle v. Howards*, stating that the Court "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).

Becker claims that since a reasonable officer in his position could have believed that he had probable cause to arrest Baeza, no First Amendment violation occurred. Docket no. 26 at 15. Additionally, Becker cites *Reichle* for the proposition that there is no clearly established right to be free from a retaliatory arrest that is supported by probable cause. *Id.* As a result, Baeza cannot meet his burden under the first prong of the qualified immunity inquiry to show that Becker violated a clearly established constitutional right. *Id.*

In his response, Baeza does not contest that a claim for retaliatory arrest cannot be made unless there is an absence of probable cause. Docket no. 29 at 12–13. However, he contends again that there was no probable cause—or at least there is a factual dispute as to whether there was probable cause—for his arrest, and as such, he can make a claim. Docket no. 29 at 13.

The Court disagrees. As explained *supra*, a reasonable police officer in Becker's situation could have very well believed he had probable cause to arrest Baeza for violation of the noise ordinance. The Supreme Court's analysis in *Reichle*, as is conceded by Baeza, makes clear that there can be no claim for retaliatory arrest when the arrest in question is supported by probable cause. *Reichle*, 132 S. Ct. at 2093. Since the Court finds probable cause for the arrest, any argument that Baeza's statement about freedom to listen to his music was the motivation behind his arrest "must fail, no matter how clearly that speech may be protected by the First Amendment." *See Mesa*, 543 F.3d at 273.

Furthermore, even if the Court were to find that Baeza's rights had been violated, there is no evidence of any factual dispute in the summary judgment record that would show Becker's actions in arresting Baeza were clearly unreasonable, and thus the second prong of the qualified immunity inquiry is not met either. *Brumfield*, 551 F.3d at 326.

Becker's summary judgment motion with respect to Baeza's claim for First Amendment retaliation is granted. That claim is dismissed.

### V. Malicious Prosecution

In his amended complaint, Baeza alleged malicious prosecution as one of his causes of action. Docket no. 4 at 8. However, as Becker noted in his Motion for Summary Judgment, there is no cognizable federal claim for malicious prosecution. *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004) (citing *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) (en banc). In his response, Baeza concedes this point, stating: "Plaintiff presents no argument on his malicious prosecution claim and therefore he effectively dismisses such claim." Docket no. 29 at

18

6. As a result, Becker's motion for summary judgment as to this claim is granted and the malicious prosecution claim is dismissed.

## CONCLUSION

In light of the foregoing analysis, Defendant Officer Donald Becker's Motion for Summary Judgment (docket no. 26) is GRANTED IN PART and DENIED IN PART. Becker's motion for summary judgment is GRANTED as to Baeza's unlawful arrest, unreasonable search and seizure, First Amendment retaliation, and malicious prosecution claims. Those claims are dismissed. Becker's motion for summary judgment is DENIED as to the excessive force claim.

It is so ORDERED.

SIGNED this 15th day of October, 2015.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE